IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ELVIA LANIER | ) |
| | ) |
| v. | ) No. 1:10-0114 |
| | ) Judge Wiseman/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) |

To: The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for supplemental security income ("SSI"), as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 15), to which defendant has responded (Docket Entry No. 16). Plaintiff has further filed a reply brief (Docket Entry No. 17) in support of her motion. Upon consideration of these papers and the transcript of the administrative record (see Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be GRANTED, and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this report.

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

# I. Introduction

Plaintiff filed her SSI application on November 29, 2006, when she was thirty-nine years old, alleging disability due to anxiety and depression. (Tr. 138, 148) Her claim was denied at the initial and reconsideration stages of agency review. Plaintiff thereafter requested and received a de novo hearing of her claim by an Administrative Law Judge ("ALJ"). The ALJ hearing was held on July 21, 2009 (Tr. 35-56), and a supplemental hearing for purposes of obtaining vocational expert testimony was held on December 10, 2009 (Tr. 22-34). Plaintiff was represented by counsel at both hearings. After hearing the case, the ALJ took the matter under advisement until January 8, 2010, when he issued a written decision finding plaintiff not disabled. (Tr. 10-16) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since November 29, 2006, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: affective mood disorder and anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand and remember lower level detailed tasks with some, but not substantial, difficulty but can not do so with complex tasks; can concentrate and attend to those tasks despite some difficulty; can interact with co-workers and supervisors without significant limitation; can relate to the general public despite some difficulty which does not substantially affect the ability to relate to the general public; can adapt to work-like settings and changes with some, but not substantial, difficulty.

5. The claimant is capable of performing past relevant work as a sewing machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since November 29, 2006, the date the application was filed (20 CFR 416.920(f)).

(Tr. 12-13, 16)

On May 7, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 3-6), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id

## II. Review of the Record

### A. Mental Impairments

Plaintiff has a history of depression and anxiety, with record evidence establishing the summer of 2003 as the outset of her mental health treatment. At that time, she presented to her local emergency room on several occasions with panic attacks or other anxious presentation (Tr. 258-74), and she was initially evaluated in a Clinically Related Group ("CRG") form by Centerstone Community Mental Health Centers ("Centerstone") personnel as having marked functional limitations as a result of her severe and persistent mental illness. (Tr. 290-92) Her Centerstone intake assessment, dated August 7, 2003, reflects her 2+ year history of depression and panic attacks, including a seven-day inpatient

stay at Vanderbilt's psychiatric hospital immediately preceding her intake at Centerstone. (Tr. 378-84) Plaintiff began treatment at Centerstone with medication and individual counseling, a course she would continue throughout the time under consideration here, to her significant benefit.

During the period relevant to her SSI application, beginning with plaintiff's alleged onset date of November 29, 2006, she carried the principal diagnoses of major depressive disorder, recurrent, moderate, and panic disorder without agoraphobia. (Tr. 523) She had experienced an increasing number of daily panic attacks in the months leading up to her alleged onset date, with the primary source of her anxiety being her contentious relationship with, and lack of support from, her abusive ex-husband who had recently moved back to Tennessee from Kentucky, the impact or threatened impact of this relationship upon her young son, and her estrangement from her mother back home in Mexico. (Tr. 547-97) Plaintiff's counselors at Centerstone witnessed her panic attacks on occasion, when plaintiff would describe a stressful scenario. (E.g., Tr. 589, 591) She had reported that her panic attacks ranged from mild to severe, and that her severe attacks would sometimes cause her to pass out. (Tr. 570)

During the period under review here, plaintiff's medical therapy at Centerstone was largely provided by psychiatrist J. Michael Graves, M.D. (Tr. 558-63, 581-86, 600-05, 609-14, 825-29, 837-41, 850-54, 858-62, 869-73, 884-88, 908-12, 928-32) Dr. Graves consistently observed that plaintiff's most prominent symptom, and her chief obstacle to maintaining employment, was her breakthrough panic attacks, which occurred despite maintenance of a full regimen of prescription medication. (E.g., Tr. 558, 837, 858, 884, 908, 928) On December 3, 2007, Dr. Graves completed an assessment of plaintiff's mental ability

4

to do work-related activities. (Tr. 782-83) Aside from a satisfactory ability to maintain basic standards of cleanliness, as well as to give attention for a two-hour segment, to understand, remember, and carry out short and simple instructions and work-like procedures, make simple work decisions, and ask simple questions regarding the work, plaintiff's other work-related, mental functional abilities were assessed by Dr. Graves as "seriously limited" (i.e., less than satisfactory), though not precluded. Id. This level of limitation was explained by reference to plaintiff's panic attacks, which she was noted to experience at a frequency of "4-5 times per day lasting 5-30 minutes" each. (Tr. 783) Dr. Graves further opined that plaintiff's impairments would force her to miss more than four days of work per month. Id.

Earlier in 2007, two psychologist consultants from the Disability Determination Services ("DDS"), the state agency to which the SSA delegates initial review duties, had provided assessments of plaintiff's functional limitations after reviewing her file, but without examining her. Those consultants, Dr. George T. Davis, Ph.D., and Dr. Jeffrey T. Bryant, Ph.D., were in agreement that plaintiff's major depressive disorder and panic disorder only moderately limited her functioning. (Cf. Tr. 697, 701 with Tr. 772, 776)

Between the end of 2007 and the date of her last recorded appointment at Centerstone, June 23, 2009, plaintiff's turbulent interactions with her ex-husband and the harmful effects of their broken home upon plaintiff's son caused her ongoing depression and anxiety symptoms to spike periodically, as reflected in the notes of her therapists and Dr. Graves. (Tr. 817-98) She continued to experience panic attacks, with at least one resulting syncopal episode noted in this timeframe. (Tr. 850) Notes of her overall psychosocial functioning demonstrate plaintiff's gradual improvement, however, as reflected in the following three assessments of her activities of daily living, interpersonal functioning,

5

adaptation to change, concentration, and current stressors:

- In February 2008: "Consumer forgets to do simple tasks from moment to moment needing constant prompting and redirecting from others just to do house chores or keep[] appointments. Consumer only using limited social support from daughter and son[,] easily isolating. Consumer adapts very poorly to any disagreements or conflicts with ex-husband and becomes very anxious and depressed. Consumer's concentration is very poor needing constant prompting and redirecting from others to do any simple chores at home or to set up any appointments needed. Very forgetful." (Tr. 880)

- In October 2008, plaintiff's daily activities were limited by poor energy and motivation. As to interpersonal functioning, she was noted to have few friends, relying mostly on her daughter for support. Her adaptation to change was rated fair, with the notation that she is "easily stressed." Her concentration was fair, and her current stressors were "coping with [symptoms]." (Tr. 855)

- In June 2009, plaintiff's daily activities were noted to be "manag[ed] with reported anxiety at times, reports she sleeps well off and on, reports she is about out of her medication today, stress re: health issues, worries about her son's relationship with his [father]." She was noted to have a good relationship with her supportive daughter, and also to be dating someone. As to adaptation, she was noted to be "coping at the present time." She did not report any problems with concentration, and listed current stressors as her physical pain and health, as well as concerns about her son's relationship with his father. (Tr. 817)

B. Physical Impairments

Plaintiff has long reported neck and back pain to her physicians. However, x-ray and MRI imaging have consistently returned normal results. (Tr. 257, 420, 457, 959, 960, 994, 996) Plaintiff was twice examined by consulting physicians at government expense. The first of these examinations took place in May 2007 in the office of Dr. Darrel R.

Rinehart.[2] However, plaintiff reported only psychological symptoms to Dr. Rinehart, and his physical examination was therefore limited and revealed no abnormalities. (Tr. 703)

After being followed by Dr. Pat Burks since at least 2004 for her primary care needs, plaintiff first visited nurse practitioner Janet Graham of Pulaski Pain Management & Adult Health Care on March 26, 2008. (Tr. 954-58) Ms. Graham observed that plaintiff's reported pain level did not correlate well with the objective examination results, and ordered minimal use of narcotics pending further MRI review of plaintiff's spine. (Tr. 956) Despite normal or near-normal results on imaging studies, plaintiff continued to complain of severe, intractable pain and paravertebral tenderness at multiple spinal levels, leading Ms. Graham to continue Dr. Burks' prescription of the narcotic painkiller Lortab, as well as prescribing other medications and ordering trigger point injections to treat plaintiff's symptoms. Plaintiff was also diagnosed with fibromyalgia during this time. (Tr. 945-1068) The last treatment note from Ms. Graham is dated December 9, 2009. (Tr. 946)

On July 13, 2009, Ms. Graham completed a physical residual functional capacity questionnaire in which she attributed plaintiff's limitations to chronic back pain and fibromyalgia. (Tr. 784-88) She opined that plaintiff could sit or stand for only thirty minutes at a time; needed to walk around for ten minutes after every thirty minutes of work; needed the option to sit, stand, or walk at will; needed to elevate her legs with prolonged sitting; could lift no more than ten pounds; could never climb ladders; could only occasionally stoop, squat, or climb stairs; and, would have to miss more than four workdays

---

[2]Plaintiff first reported for her consultative examination with Dr. Rinehart in April 2007, but experienced a panic attack upon arriving at his office and was sent on to the emergency room for treatment. (Tr. 672-84)

per month on account of her impairments.

On August 18, 2009, Dr. Donita Keown conducted a second consultative examination of plaintiff, noting that plaintiff complained of diffuse joint and muscle pain and stiffness associated with fibromyalgia, but could not recall if that diagnosis had been confirmed by a rheumatologist or other specialist. (Tr. 935) Dr. Keown's examination findings were unremarkable, except for the following:

> Thoracolumbar column: Dorsiflexion 105 degrees during one aspect of the exam, but during the formal examination she will not dorsiflex more than 30 degrees. No asymmetry or spasm, complaints of significant pain with light touch to the skin covering parts of the posterior thorax, typically not associated with fibromyalgia syndrome. Extension 15 degrees, effort poor, left and right lateral flexion 30 degrees, straight leg raise maneuvers are clearly negative seated, overly positive supine indicative of unreliable effort.

Based on these results, Dr. Keown found no objective evidence to support plaintiff's claimed limitations, nor any requirement for workplace restrictions. (Tr. 937)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

8

1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

10

Plaintiff's case is largely based upon alleged errors in the ALJ's consideration of the record of her mental impairments.  Plaintiff first argues that the ALJ erred in failing to find her disabled at step three of the sequential evaluation process, given that she meets the criteria of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders).  She further argues that the ALJ erred in his findings of her RFC and her ability to perform past relevant work as a sewing machine operator, based on his erroneous failure to consider all the evidence before him, including evidence of plaintiff's obesity,[3] evidence of a greater severity of mental impairment than was credited by the ALJ, and evidence supporting the credibility of plaintiff's subjective complaints of the extent to which she is limited.  The lynchpin of all these alleged errors is plaintiff's claim that the opinion of her treating psychiatrist, Dr. Graves, was erroneously discredited in favor of the opinion of Dr. Bryant, the nonexamining psychological consultant to the DDS.  As explained below, the undersigned finds merit in plaintiff's arguments that the ALJ's decision does not meet the threshold for affirmance under substantial evidence review, and so recommends that the matter be remanded to the agency for further proceedings.

As recognized by the vocational expert (Tr. 31-32), it is clear that Dr. Graves' December 2007 assessment of plaintiff's mental ability to perform work-related tasks (Tr. 782-83), if adopted, would require a finding that plaintiff was/is disabled by her panic disorder.  In reaching his findings regarding the Listings, plaintiff's residual functional capacity, and her ability to perform past relevant work, the ALJ adopted the opinion of Dr.

---

[3]As pointed out in the government's brief (Docket Entry No. 16 at 16-17), the record does not appear to support obesity as a medically determinable impairment.  See Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *3-4.

11

Bryant while rejecting, explicitly or implicitly, the opinion of Dr. Graves. Unfortunately, as plaintiff notes, this weighing of the medical opinions is not supported by any particular "analysis or true consideration of all the facts." (Docket Entry No. 15-1 at 17) The ALJ merely recited the opinions contained in Dr. Graves' assessment, and followed that recitation with the following conclusion: "I do not accept Dr. Graves' medical source statement as the treatment notes and other objective medical evidence of record do not support this opinion." (Tr. 15) In turn, this paragraph is followed by a paragraph reciting the findings of Dr. Bryant, and concluding with the following:

> Dr. Bryant's opinion is further supported by the prior mental residual functional capacity of Dr. George T. Davis, who had substantially the same findings in his April 2007 reports. I find the opinions of state agency psychologists Dr. Jeffrey T. Bryant and Dr. George T. Davis to be well-supported by the objective medical evidence of record. Their findings are not inconsistent with the other substantial evidence of record; therefore, I accord significant weight to their findings. The residual functional capacity noted above is consistent with their opinions.

Id. The only bit of discussion or analysis regarding the proof of plaintiff's mental impairments is contained in the following blurb which preceded the ordering of the opinion evidence: "The claimant sought treatment for her psychological disorders at Centerstone Mental Health Center from 2002 to 2009. Treatment notes from Centerstone reveal diagnoses of major depressive disorder (recurrent, moderate) and panic disorder. While these conditions do appear to be ongoing, the claimant appears to be making progress with mental health therapy and medication to better manage her depression and anxiety." (Tr. 14)

The Sixth Circuit has recently dealt with an ALJ's failure to adequately explain

12

his or her reasoning in the specific context of reviewing the decision to reject a treating source opinion, Blakley v. Comm'r of Soc. Sec., 581 F.3d 399 (6th Cir. 2009), and, more remotely, in the context of allowing for meaningful appellate review generally, Hurst v. Sec'y of Health & Human Servs., 753 F.2d 517 (6th Cir. 1985). Citing Hurst, the court in Bailey v. Comm'r of Soc. Sec., 1999 WL 96920 (6th Cir. Feb. 2, 1999), noted as follows:

> To be entitled to substantial deference, however, agency rulings must clearly articulate the rationale underlying the decision. ... In *Hurst*, this court discussed the articulation necessary to support an ALJ's decision regarding disability benefits. We noted "[i]t is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes. Similarly, Social Security Ruling ("SSR") 82-62, provides that the "rationale for a disability decision must be written so that a clear picture of the case can be obtained." The ALJ's decision must "follow an orderly pattern and show clearly how specific evidence leads to a conclusion."

Bailey, 1999 WL 96920, at *3-4.

Likewise, the court in Blakley held that while the ALJ's decision to give greater weight to nonexamining state agency physicians than to the claimant's treating physician is not, by itself, reversible error, the failure to adequately explain the reduced weight given the treating physician's opinion is. Taking note of its prior decisions in Wilson v. Comm'r of Soc. Sec., 378 F.3d 541 (6th Cir. 2004), and Rogers v. Comm'r of Soc. Sec., 486 F.3d 234 (6th Cir. 2007), the Blakley court reiterated that the procedural requirement that good reasons be given when less than controlling weight is accorded the opinion of a treating physician exists in part to permit meaningful review of the ALJ's application of the treating physician rule, and that failure to explain precisely how such reasons affect the weight given

13

the opinion "'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" Blakley, 581 F.3d at 407 (quoting Rogers, 486 F.2d at 243). In particular, "[i]f the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." Id. at 406. Applying these standards to the record before it, the Blakley court held as follows:

> Even assuming *arguendo* that the ALJ correctly reached her determination that Dr. Kibler should be discredited, the ALJ's summary rejection of Dr. Kibler without explaining the weight given his opinions falls short of the Agency's own procedural requirements: "[A] finding that a treating source medical opinion ... is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id.

581 F.3d at 408.

In the instant case, despite the government's best efforts to rehabilitate the ALJ's decision to give no weight to the treating psychiatrist's opinion (Docket Entry No. 16 at 21-23), the ALJ's bare statement that Dr. Graves' opinion was rejected because "the treatment notes and other objective medical evidence of record do not support [his] opinion" (Tr. 15), is plainly inconsistent with the SSA's own procedural regulations, i.e., 20 C.F.R. § 416.927, and is frankly insufficient to permit meaningful judicial review of his decision

14

denying benefits.  In accordance with Hurst, Bailey, and Blakley, the undersigned concludes that the decision in this case should be reversed, with remand of the matter to the SSA for rehearing and the issuance of a new decision free from the errors discussed herein.

### IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be GRANTED, and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this report.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 23rd day of January, 2012.

    s/ John S. Bryant  
JOHN S. BRYANT  
UNITED STATES MAGISTRATE JUDGE